## Richmond

### JAMES PATRICK LEAKE

### v.

### COMMONWEALTH OF VIRGINIA

April 18, 1980.

Record No. 790634.

Present: All the Justices.

*George M. Coles, Jr.; J. Randolph Parker (Lowe and Gordon, Ltd.,* on brief), for appellant.

*James E. Kulp, Deputy Attorney General (Marshall Coleman, Attorney General; Burnett Miller, III, Assistant Attorney General,* on brief), for appellee.

CARRICO, J., delivered the opinion of the Court.

Indicted for possession of marijuana with intent to distribute, the defendant, James Patrick Leake, was tried by jury and convicted of possession with intent to distribute only as an accommodation. In accordance with the jury's verdict, the defendant was sentenced to serve 12 months in jail and to pay a fine of $1,000. The dispositive question in the case is whether the defendant suffered a violation of his Fourth Amendment right against unreasonable searches and seizures.

The evidence shows that on September 27, 1977, two Albemarle County Sheriff's Department plainclothesmen, Detective Craft and Captain Higgins, went to an apartment building to interview the occupant of a third-floor unit in connection with a homicide investigation. Receiving no response to their knock, the officers started down the stairs and, between the second and third landings, passed the defendant as he proceeded up the stairway. The officers waited and observed the defendant as he knocked at the door of the same apartment they had just left.

When the defendant received no answer at the door, he started down the stairs. Thinking that the defendant might be able to provide information concerning the occupant of the apartment, Captain Higgins hailed the defendant and asked to talk to him, but he "kept going on down the flight of steps." The defendant halted only after Craft and Higgins identified themselves as police officers and repeatedly called upon him to stop. By this time, he had reached the bottom of the stairs and was outside the building.

The officers caught up with the defendant and observed that he was "highly nervous" and "visibly shaking." In response to several inquiries concerning his name, he gave only his nickname, "Patty." Detective Craft thought the defendant was "acting mighty strange."

The defendant was carrying in his hand a "rolled up brown paper bag." When called upon to produce some identification, he placed the bag between his legs and fumbled for his wallet. At this point, suspicious that the defendant "had something in the bag that wasn't right," Detective Craft pointed to the bag and asked what was in it. The defendant replied, "nothing man, nothing." Craft asked again what was in the bag, this time reaching down and grasping the bag with his hands and shaking it. Releasing "his grip with his legs," but keeping his hand on the bag, the defendant replied to Craft's inquiry by saying, "marijuana, man." Thereupon, Captain Higgins placed the defendant under arrest and gave him the "Miranda warnings." * Detective Craft "took the bag in [his] possession." Later analysis revealed that the bag contained nearly a pound of marijuana.

At trial, the defendant moved to suppress both the marijuana and his statement that the bag contained the drug. He asserted that this evidence had been obtained from him as a result of an unreasonable search and seizure. The motion was denied, and the disputed evidence was admitted.

On appeal, the defendant makes no complaint concerning the officers' actions in stopping him and requiring identification from him. He argues, however, that when Detective Craft grabbed the bag in question and shook it, contemporaneously inquiring about its contents, a search occurred within the meaning of the Fourth Amendment. And, the defendant continues, because the search was warrantless and "the officers admitted that they had no probable cause to believe the bag. . .contained contraband," the only exception to the warrant requirement possibly available to the Commonwealth was a " 'stop and frisk' search" within the meaning of *Terry* v. *Ohio,* 392

---

* *Miranda* v. *Arizona,* 384 U.S. 436 (1966).

U.S. 1 (1968). But, the defendant asserts, because the officers also admitted that "they had no suspicion that [he] possessed a dangerous weapon," the search cannot be justified as part of a " 'stop and frisk' within the *Terry* case." Accordingly, the defendant concludes, his statement that the bag contained marijuana and the drug itself should have been suppressed.

Responding to the defendant's arguments, the Attorney General does not rely upon any of the exceptions to the Fourth Amendment's warrant requirement as justification for the officers' conduct in this case. Instead, the Attorney General contends that the confrontation between the officers and the defendant was "neither a 'search' or 'seizure' nor was it 'unreasonable' as prohibited by the Constitution." While he does not rely upon *Terry* to establish a "stop and frisk" exception here, the Attorney General says, the case does "set forth broad guiding principles to aid police in their conduct" and recognizes that there are "a myriad of valid confrontations between police and citizens on the street which could be construed as infringing upon personal security, but [are] otherwise reasonable and, consequently, not offensive of the Constitution."

The test of the reasonableness of police conduct, the Attorney General points out, is "whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry,* 392 U.S. at 20. There is no question in this case, the Attorney General opines, that the officers' initial actions in stopping and questioning the defendant were justified; the only conduct that is complained of consists of Detective Craft's later action when he grasped and shook the bag in question. But Craft explained in his testimony, the Attorney General asserts, that he grasped and shook the bag merely "to emphasize the object of his question" concerning the contents of the bag. This explanation and the other evidence clearly reflect, the Attorney General concludes, "that the officers acted within permissible boundaries" in this case.

From these arguments, it is obvious that the determinative question is whether Detective Craft's action in grasping and shaking the bag held by the defendant constituted a search within the meaning of the Fourth Amendment. It is apparent also that the parties agree that, while the *Terry* case is not directly in point, its teachings are indispensable to a resolution of the question presented here.

In establishing the "stop and frisk" exception to the Fourth Amendment's warrant requirement, the Supreme Court in *Terry* recognized the necessity for "a narrowly drawn authority to permit a reasonable

search for weapons for the protection of the police officer, where he has reason to believe that he is dealing with an armed and dangerous individual, regardless of whether he has probable cause to arrest the individual for a crime." 392 U.S. at 27. The Court made clear, however, what type of conduct it considered sufficient to constitute a search. In the course of its opinion, the Court said:

"[I]t is nothing less than sheer torture of the English language to suggest that a careful exploration of the outer surfaces of a person's clothing all over his or her body in an attempt to find weapons is not a 'search.' " *Id.* at 16.

\* \* \*

"We. . .reject the notions that the Fourth Amendment does not come into play at all as a limitation upon police conduct if the officers stop short of something called a 'technical arrest' or a 'full-blown search.'

"In this case there can be no question, then, that [the police officer] 'seized' petitioner and subjected him to a 'search' when he took hold of him and patted down the outer surfaces of his clothing." *Id.* at 19.

\* \* \*

"The scope of the search in this case presents no serious problem. . . . [The police officer] patted down the outer clothing of petitioner and his two companions. He did not place his hands in their pockets or under the outer surface of their garments until he had felt weapons, and then he merely reached for and removed the guns. He never did invade Katz' person beyond the outer surfaces of his clothes, since he discovered nothing in his pat-down which might have been a weapon. [The officer] confined his search strictly to what was minimally necessary to learn whether the men were armed and to disarm them once he discovered the weapons. He did not conduct a general exploratory search for whatever evidence of criminal activity he might find." *Id.* at 29-30.

■ Thus, it is clear from *Terry* that a mere pat-down of the outer garments of a suspect is a search within the meaning of the Fourth Amendment. Furthermore, our own definition of the term "search" is consonant with this viewpoint. In *Cook* v. *Commonwealth*, 216 Va. 71, 73, 216 S.E.2d 48, 50 (1975), we said that a search " 'implies a prying into hidden places,' " that the term means "to conduct

an 'exploratory investigation,' " and that "it involves an 'invasion and quest.' "

We believe that Detective Craft's grasping and shaking of the bag held by the defendant, contemporaneous with the officer's inquiry concerning the contents of the bag, constituted a prying into hidden places, an exploratory investigation, and an invasion and quest. The police action here, therefore, no less than the pat-down of the outer garments of the suspect in *Terry,* was a search within the meaning of the Fourth Amendment. *Crowder* v. *United States,* 379 A.2d 1183, 1185 (D.C. 1977).

█ Because the present search was warrantless and without sanction of an exception to the warrant requirement, it was unreasonable. Accordingly, both the statement made by the defendant and the marijuana seized from him following the search were the fruits of illegal police action and should have been suppressed. *Brown* v. *Illinois,* 422 U.S. 590, 601-02 (1975); *Wong Sun* v. *United States,* 371 U.S. 471, 485-86 (1963). *See Reese* v. *Commonwealth,* 220 Va. 1035, 265 S.E.2d 746 (1980).

With the defendant's statement and the marijuana excluded, the evidence is insufficient to sustain the defendant's conviction. Accordingly, the judgment of the trial court will be reversed, and the prosecution against the defendant will be dismissed.

*Reversed and dismissed.*