Filed 12/6/22

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| BRANDON JAMES CLAYPOOL,<br><br>          Petitioner,<br><br>     v.<br><br>THE SUPERIOR COURT OF SACRAMENTO COUNTY,<br><br>          Respondent;<br><br>THE PEOPLE,<br><br>          Real Party in Interest. | C096620<br><br>(Super. Ct. No. 21FE002384) |

ORIGINAL PROCEEDING in mandate and/or prohibition. Let a peremptory writ of mandate issue. Kenneth N. Brody, Judge.

Amanda Benson, Public Defender, Alice Michel and Dena Stone, Assistant Public Defenders, for Petitioner.

No appearance for Respondent.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Christopher J. Renchand and Darren K. Indermill, Supervising Deputy Attorneys General, for Real Party in Interest.

Petitioner Brandon James Claypool brought this timely petition for writ of mandate or prohibition to challenge the denial of a motion to suppress evidence and dismiss the charges. Petitioner is charged with possession of a firearm by a felon, unlawful possession of ammunition by a felon, unauthorized alteration of a firearm, and carrying a loaded

1

firearm in a vehicle, along with an enhancement for a prior strike pursuant to the three strikes law.  The evidence at issue was found in a locked glove box in petitioner's car during a parole search of a back seat passenger.  Petitioner, who was both the driver and owner of the car, was neither on searchable probation nor parole at the time.  Police used a key to open the glove box and found a gun containing ammunition.

The People argue the parole search of the back seat passenger permissibly extended to the locked glove box because officers could reasonably expect the parolee could have secreted contraband there after he became aware of the police.  But, absent additional evidence, we find the facts do not support such an attenuated inference.  The parolee was not independently capable of accessing the glove box.  Nor did police observe anything suggesting the occupants of the car were maneuvering to get the gun from the back seat passenger into the glove box and lock it.  Our conclusion is further bolstered by other relevant factors identified by our state Supreme Court, including petitioner's own privacy interests.  (See *People v. Schmitz* (2012) 55 Cal.4th 909 (*Schmitz*).)  We shall issue a peremptory writ of mandate and direct respondent court to grant petitioner's motion.

BACKGROUND

Petitioner initially moved to suppress the evidence at the preliminary hearing. Accordingly, the facts are taken from the evidence adduced at that hearing.

Petitioner was driving a Honda Accord with two passengers, Malcolm Clay in the front passenger seat, and parolee Carlos Olivia in the rear seat on the passenger's side.  An officer testified that police first saw petitioner's car in an area where the officer had "contacted multiple known gang members" and "personally made multiple gun arrests." Police observed that the front seat occupants appeared to "be leaned back" when they passed the police car traveling the other way and decided to make a U-turn and follow the car.  There is no evidence police saw the occupants turn toward the back seat so as to exchange or pass anything, nor any other indication of unusual interaction among the occupants.  Police followed petitioner's car as it made an abrupt turn onto a side street

until it stopped, blocking a residential driveway. Police observed that blocking a driveway is a violation of the Vehicle Code. (See Veh. Code, § 22500, subd. (e)(1).)

After confirming their location for purposes of officer safety, police approached the car and contacted its occupants. An officer testified that he could not recall whether he saw petitioner remove the keys from the ignition. By the time petitioner was visible in the bodycam footage, the car keys were in his lap and the engine was off. Petitioner also had a cellphone and a wallet in his lap, which bodycam footage reflects that he picked up at different points during the encounter with police. At one point, petitioner inadvertently set off the car alarm, indicating he picked up or otherwise touched the keys as well. Police saw a bottle of cognac in the back seat near rear passenger Olivia, which he acknowledged was his. It had been opened and was not completely full. Olivia advised police he was on parole, and they decided to do a parole search of the passenger compartment.[1]

Officers directed each of the occupants to exit the car in turn. Although front seat passenger Clay did not himself provide the justification for the search, one officer said he noticed Clay was visibly sweating and appeared nervous at that time. The video evidence is not dispositive, but petitioner correctly observes that signs of nervousness or sweating are not readily apparent. An officer testified nervousness was typical for a variety of reasons, including being on probation or parole or having outstanding warrants or contraband. Further, an officer testified that he thought Clay responded, "I don't know," when asked if there was a gun in the car.

Petitioner was asked to leave items on the dashboard as he exited the car, and police were apparently able to retrieve his keys during the search. Police used a key on

---

[1]    The front seat passenger, Clay, was on searchable probation, but police acknowledged they were not aware of that at the time. Clay did not tell them about his probation status, and they learned of it as a result of a record check. The magistrate assumed the front passenger's status did not support the search, which appears to be an implied factual determination. Neither respondent court nor the People attempted to justify the search based on passenger Clay.

petitioner's keychain to unlock the glove box, revealing the evidence at issue. One officer testified he "believe[d]" that key "was the same key used for the ignition."

In moving to suppress at the preliminary hearing, petitioner claimed insufficient evidence supported the connection between Olivia and the locked glove box, and the otherwise lawful parole search exceeded its legitimate scope. The magistrate disagreed, emphasizing Clay's nervousness, his noncommittal response when asked if there was a gun, and evidence it was a high crime area. Ultimately, the magistrate found it reasonable to believe that Olivia could have quickly handed a gun up front for his compatriots to lock in the glove box. The magistrate characterized this search as extending to its "outer [permissible] limits" but found it not "beyond reason."

Petitioner moved to dismiss the information pursuant to Penal Code[2] sections 995 and 1538.5 in respondent court, arguing the evidence should be suppressed. In denying the motion, the court agreed with the magistrate and found this to be within the scope of a reasonable parole search of Olivia. The court further emphasized "the keys of the vehicle were no longer in the ignition, but were in the actual possession of the defendant who was seated in the driver's seat."

Petitioner then brought the current petition for writ of mandate or prohibition to challenge that decision. We issued a stay of trial and, following review of preliminary opposition, an order to show cause.

DISCUSSION

The facts come from the preliminary hearing transcript as no additional evidence was presented before respondent court. Accordingly, any express or implied factual determinations of the magistrate that are supported by substantial evidence guide our review rather than such determinations by respondent court. (*People v. Romeo* (2015) 240 Cal.App.4th 931, 941; § 1538.5, subd. (i).) We otherwise exercise our independent

---

[2] Further undesignated statutory references are to the Penal Code.

judgment to apply the law and determine whether the search at issue was reasonable under the Fourth Amendment. (*People v. Redd* (2010) 48 Cal.4th 691, 719; *Romeo*, at pp. 941-942.)

A parole search of a car based on a passenger's status as a parolee requires a nexus between the area or item searched and the parolee, as most fully articulated by our state Supreme Court in *Schmitz*. Relevant factors include the nature of the area or item, how close and accessible it is to the parolee, the privacy interests at stake, and the government's interest in the search. (*Schmitz*, *supra*, 55 Cal.4th at p. 923.) In considering the government interest at stake, the state Supreme Court recognized interests it characterized as "substantial," including that parolees were more likely to commit offenses and pose safety concerns, the parolees' need for effective supervision, and parolees' incentive to conceal criminal activities by quickly disposing of evidence. (*Id.* at pp. 923-924.) But that did not obviate all privacy interests of other individuals. A permissible search based on a passenger's parole status is limited to "those areas of the passenger compartment where the officer reasonably expects that the parolee could have stowed personal belongings or discarded items when aware of police activity." (*Id.* at p. 926.)

In a footnote, the *Schmitz* court addressed the issue we face here -- the search of "closed compartments of the car like the glove box, center console, or trunk." (*Schmitz*, *supra*, 55 Cal.4th at p. 926, fn. 16.) The court noted these were not at issue and the court therefore expressed "no opinion" of whether a search of "such closed-off areas could be based solely on a passenger's parole status." (*Ibid.*) But the court emphasized: "The reasonableness of such a search must necessarily take into account all the attendant circumstances, including the driver's legitimate expectation of privacy in those closed compartments, the passenger's proximity to them, and whether they were locked or otherwise secured." (*Ibid.*)

The analysis in *Schmitz* is instructive. The state Supreme Court upheld a vehicle search where a male passenger in the front seat was on parole. (*Schmitz*, *supra*, 55 Cal.4th

5

at p. 914.) A woman with a child was a passenger in the back seat, where police found a woman's purse, a bag of chips, and a pair of shoes. (*Ibid.*) Police found two syringes in the bag of chips and methamphetamine in the shoes. (*Ibid.*) The Supreme Court emphasized that the People did not attempt to justify a search inside the purse; only the search of the bag of chips and shoes were at issue. (*Id.* at p. 914, fn. 1.) The court began by observing the lack of evidence of any barrier between the front and back seats. (*Id.* at p. 926.) Turning to the items searched, the court observed that a bag of chips, unlike a purse, was not an " 'inherently private repository for personal items' " with distinct characteristics that tied it to a person; rather, it was often a receptacle for trash. (*Id.* at p. 931, quoting *People v. Baker* (2008) 164 Cal.App.4th 1152, 1159.) The court also noted that, though not dispositive, nobody had claimed control over the bag of chips at the time of the search, and it was otherwise reasonable to believe the parolee could reach back and conceal contraband there. (*Schmitz,* at p. 931.) The court found the search of the shoes presented "a closer question" than the bag of chips as it was unclear from the record who owned them and whether they were gender specific. (*Id.* at p. 932.) But since they were on the back seat, it was objectively reasonable that the parolee could reach back and hide contraband there. (*Ibid.*)

Applying the *Schmitz* analysis and factors here, it does not appear objectively reasonable to believe the back seat passenger, Olivia, might have secreted a gun in the glove box after he saw police. To do so would almost certainly require the engagement and assistance of both petitioner, who had the keys, and Clay, who was in the front passenger seat. Yet, in upholding the search in *Schmitz*, the Supreme Court looked to whether the parolee himself was able to reach back and secrete contraband in the items, given his proximity, without other occupants' assistance. Here, we have a very different situation. Given that parolee Olivia could not himself have acted without assistance, it would only be reasonable to believe he secured contraband in the glove box if the police had observed some indication of it. This is also consistent with the focus of the parole

6

search being on Olivia rather than the other occupants. Further, in upholding the search in *Schmitz*, our Supreme Court emphasized, as factors relevant to parole searches and of particular concern in evaluating searches of closed containers, the other occupants' privacy interests based on who likely had possession of the items in the car. Petitioner's privacy interests are strong, as he was both the owner of the car and the person who retained possession of the key to the glove box.

Evidence that front seat passenger Clay might have been nervous appears to us of little weight. There are many reasons why someone might be nervous if stopped by police and ordered out of a car. Likewise, the fact that Clay might have said he did not know if there was a gun in the car is not relevant to establishing the permissible scope of a parole search of Olivia. Nor do the People assert there was probable cause to search the car for contraband based on Clay's isolated nonresponse, nor was probable cause found to exist by either the magistrate or respondent court on this ground. Moreover, even assuming the evidence supports an inference that the occupants sought to avoid police, this too fails to justify expanding a parole search of Olivia into someone else's locked glove box.

Like the magistrate and respondent court, the People nevertheless suggest it would have been "very easy" for Olivia to pass contraband forward to store it at a more secure location. The People argue, "given Olivia's parole status and the consequences that would flow from him possessing a firearm, one might expect him to do just that once he became aware that the police were following the vehicle he was riding in." And that only a "handful of seconds" were needed. The People make much of the fact that there was evidence the keys were on petitioner's lap when police approached and argue "[i]t matters not that there was no evidence that the officers observed any furtive movements by the occupants" before the stop. The People otherwise note there was at least some time after police first saw the car when they would not necessarily have seen what its occupants were doing.

7

In making these points, the People rightly focus on the test the state Supreme Court developed.  The question is not whether it is reasonable to believe the parolee could have secured property in the glove box *before* he noticed the police.  Rather, the relevant period is the time between when the parolee became aware of the police and the search.  And here, we find it critical that there is no evidence suggesting the type of movements among the three occupants consistent with secreting the gun into the glove box.  Indeed, such movements in concert would risk being easily observed by police, who were likely watching the occupants nearly the entire time, if not always closely.  The possible exception was when the police made the U-turn to follow petitioner's car, but even then, it was possible for an officer to look back at petitioner's car.  What *was* reasonable, under these circumstances, was for Olivia to discretely use more accessible portions of the car to hide contraband without enlisting the assistance of the other occupants.  And a search limited to those areas accessible to Olivia still serves the important interests identified by our state Supreme Court in adequately supervising parolees.

Moreover, the evidence presented at the preliminary hearing, including the questions posed to the police and the appearance of the car in the video footage, indicate the car had a standard ignition and lacked a keyless ignition.  The rulings by the magistrate and respondent court, as well as the briefing by the parties in this court, similarly assume the car did not have a keyless ignition.  The key the police used to open the glove box was on the same keychain as the ignition key, and the police testimony suggests there was only one ignition key.  It therefore appears improbable the occupants could have accessed the glove box while the car was moving.

Finally, we note that respondent court also cited *People v. Chavers* (1983) 33 Cal.3d 462, in denying the motion at issue as that case, too, involved search of a glove box.  We find *Chavers* to be inapposite as the case did not involve the limits on a parole search and its scope that we address here.  Rather, it involved a search based on probable cause to believe there was evidence of criminal activity.  In that case, police were

8

investigating an armed robbery and stopped a car speeding away from the robbery scene at a high speed. (*Id.* at pp. 464-465.) The car and its occupants corresponded roughly to the suspects and vehicle police were looking for. (*Id.* at p. 465.)

DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to: (1) vacate its July 8, 2022, order denying petitioner's Penal Code sections 995 and 1538.5, subdivision (i) motion; and (2) to issue a new order that grants the motion. The stay of trial previously issued by this court, having served its purpose, is vacated upon finality of this opinion.

/s/
Robie, Acting P.J.

We concur:

/s/
Renner, J.

/s/
Earl, J.