Filed 12/3/13  P. v. Primera CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE, | B246680 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. GA086585) |
| v. | |
| ARACELI PRIMERA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Dorothy L. Shubin, Judge.  Reversed and remanded with directions.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Scott A. Taryle and John Yang, Deputy Attorneys General, for Plaintiff and Respondent.

## INTRODUCTION

Defendant Araceli Primera appeals from the judgment entered on her plea of nolo contendere to the offense of possession for sale of a controlled substance. (Health & Saf. Code, § 11378.) Primera contends the trial court improperly denied her Penal Code section 1538.5 motion to suppress evidence resulting from a search of the inside of a lint brush in a purse found in her automobile after she was stopped for a traffic violation. Primera contends that neither of the exceptions to the warrant requirement relied upon on appeal by the Attorney General – the exception for a search of identification and the so-called automobile exception – apply in this case to justify the warrantless search.

We agree that the prosecution failed to satisfy its burden to demonstrate a legal justification of the warrantless search of the lint brush. We therefore reverse the judgment of conviction and remand the matter to the trial court with directions to vacate the order denying Primera's suppression motion, enter a new order granting the motion with respect to the contents of the lint brush, and permit Primera to withdraw her guilty plea.

## FACTUAL AND PROCEDURAL BACKGROUND

City of Glendale Police Officers Jeremy Aliaga and Guillermo Jimenez stopped the car Primera was driving because she failed to stop before the marked limit line at a red light, in violation of Vehicle Code section 21453, subdivision (a). Officer Aliaga asked Primera for her driver's license, and Primera stated she did not have it. Primera and Delgado were both asked to get out of the vehicle. Officer Aliaga ran the name and date of birth Primera gave him through the Department of Motor Vehicles database and found a match. Because the database

2

does not show photographs, however, Officer Aliaga could not verify that the driver was actually Primera.

Meanwhile, Officer Jimenez spoke with the passenger of the vehicle, codefendant Robert Delgado, who stated that he had a gang affiliation. Officer Jimenez asked Delgado if he would consent to a search of his person, and Delgado said, "Go ahead." Officer Jimenez located approximately $407 in cash in different denominations in his pocket.

While Officer Aliaga waited outside the vehicle with Primera and Delgado, Officer Jimenez searched the car for the purpose of finding a driver's license or other identification belonging to Primera. Officer Jimenez found two purses in the car, one white and one brown. Officer Jimenez searched the white purse first, and inside found numerous receipts, gift cards, and clothing tags from department stores as well as a driver's license bearing the name Michelle Julie Kegsaw. Officer Aliaga told Primera that his partner had found a license in someone else's name. Primera explained that the license belonged to a friend of hers named Gabby who left it in her car. When Officer Aliaga told her the name on the license was Michelle Julie Kegsaw, Primera said she did not know who that was, and she must be a friend of Gabby.

Officer Jimenez then searched the brown purse, which contained miscellaneous cards in the name of Primera. It also contained a lint roller, which the officer opened; inside he found baggies containing a crystal substance resembling methamphetamine, as well as a pipe.[1]

---

[1]    Officer Jimenez did not testify that there was anything about the outward appearance, weight, or other characteristic of the lint brush that made him believe it contained contraband. He did not state what he was looking for when he opened the lint brush, or otherwise explain why he opened the lint brush.

3

Next, Officer Jimenez searched the text messages of a cellphone found in the car. He saw a text which stated, "How much will you sell me a T for?", and a response stating, "70." Based on his training and experience, Officer Jimenez interpreted the messages to mean that the recipient of the first text message had agreed to sell a "teener," or one sixteenth of an ounce of methamphetamine, for $70. Delgado identified the phone as belonging to him.

Primera was charged with possession for sale of methamphetamine (Health & Saf. Code, § 11378) and selling or transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)). She pled not guilty, and, pursuant to Penal Code section 1538.5, brought a motion to suppress the evidence that resulted from her detention. The trial court denied the motion to suppress. The court concluded that a limited warrantless search of Primera's car, including the two purses within the car, was permissible for the purpose of finding identification of Primera. Once a search of the first purse yielded "items that appeared to be contraband or suggesting that there was criminal activity afoot," the increased scope of the search was justified under the automobile exception.

Primera subsequently entered a plea of nolo contendere to the first count of possession for sale of narcotics, and the trial court dismissed the second count. She was placed on formal probation for three years, with a number of conditions, and ordered to pay various fines and fees.

Primera has appealed from the judgment of conviction. (Pen. Code, § 1538.5, subd. (m); *People v. West* (1970) 3 Cal.3d 595, 601.)

**DISCUSSION**

I.    *Reasonableness of Warrantless Search*

Subject to "'well-delineated exceptions,'" warrantless searches are presumed to be unreasonable under the Fourth Amendment of the United States Constitution. (*People v. Diaz* (2011) 51 Cal.4th 84, 90; see *Arizona v. Gant* (2009) 556 U.S. 332, 338.) The prosecution bears the burden of demonstrating a legal justification for a warrantless search. (*People v. Evans* (2011) 200 Cal.App.4th 735, 742 (*Evans*).) Evidence obtained during an unreasonable stop, search or seizure must generally be excluded. (*Mapp v. Ohio* (1961) 367 U.S. 643.) Under the fruit of the poisonous tree doctrine, evidence that is gathered as a direct or indirect result of the illegal search must also be excluded. (*Wong Sun v. United States* (1963) 371 U.S. 471, 484-485.)

Primera contends that the opening of the lint brush found inside her purse was an unconstitutional search, and thus the methamphetamine and paraphernalia found inside the brush should have been suppressed. The Attorney General contends that the search of the purse was justified under the exception permitting a search for identification, and that the opening of the lint roller found inside her purse was constitutionally permissible both as part of a search for Primera's identification and pursuant to the automobile exception to the warrant requirement.[2]

In reviewing the trial court's ruling on a motion to suppress, we defer to the court's factual findings, express or implied, when supported by substantial evidence. (*Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1223.) However, we

---

[2]    The Attorney General also asserts in conclusory fashion that the contents of the lint brush were admissible under the inevitable discovery doctrine. Because the assertion is not supported by any argument, we decline to consider it.

exercise our independent judgment in determining whether, on the facts found, the search or seizure was reasonable under the Fourth Amendment. (*Ibid*.) A suppression motion ruling is judged exclusively by federal constitutional standards. (*Ibid*.)

A.    *Exception for Search for Identification*

 1. *Search of Purses Pursuant to Exception for Search for Identification*

"Limited warrantless searches for required registration and identification documentation are permissible when, following the failure of a traffic offender to provide such documentation to the citing officer upon demand, the officer conducts a search for those documents in an area where such documents *reasonably may be expected to be found*. Under this standard, an officer may not search for such documents on pretext [citation], or without first demanding that they be produced [citation], and an officer may not search in containers or locations in which such documents are not reasonably expected to be found. [Citations.]" (*In re Arturo D.* (2002) 27 Cal.4th 60, 86 (*Arturo D.*), fn. omitted.)

Thus, where a driver was unable to produce a driver's license during a traffic stop, courts have upheld a search of a purse inside a vehicle for the purpose of finding the driver's identification. (See *People v. Hart* (1999) 74 Cal.App.4th 479, 491 (*Hart*).) In *Hart*, the police observed a parked van whose right front and rear tires were on the sidewalk, in violation of the Vehicle Code. (*Id*. at p. 484.) The police officer asked the driver of the van for identification. After the driver claimed to be searching the floor of the van for her driver's license and had not found it after several minutes, the officer asked her to step out of the van, and searched a purse he found inside the car for identification. (*Id*. at p. 491.) The court held that "[w]hile the defendant told him her identification was in the visor or

on the floorboard, in light of her inability to produce any identification, it was reasonable for the deputy to conclude that her identification could be elsewhere and that some form of identification would likely be found in her purse." (*Ibid.*) Thus, in this situation, a warrantless search of the defendant's purse did not violate the Fourth Amendment. (*Ibid.*)

By contrast, a "crumpled fast-food bag," or an enclosed rear interior compartment, are *not* locations or containers in which identification documents would reasonably be expected to be found. (*In re Arturo D., supra,* 27 Cal.4th at p. 86.) Therefore, a search of these locations would not be permissible under the exception for a search for identification. (*Ibid.*)

Primera concedes that, under *Arturo D.,* the search of the purses in her car was permissible as a search for identification. After being stopped for a traffic violation, Primera told Officer Aliaga that she did not have a driver's license with her. Although Primera provided her name and birth date, and Officer Aliaga found a match on the DMV website, he was not able to confirm Primera's identification because the website does not include photographs. Because Primera's identification reasonably could be expected to be found in one or both of the purses that Officer Aliaga could see inside the car, a search of those purses for the purpose of finding a driver's license or other identifying documents was permissible.

2. *Search for Identification Could Not Justify Search Inside the Lint Roller*

The Attorney General contends that the opening of and search inside the lint roller found in the second purse was justified by the need to find identification for Primera, because Primera could have stored her driver's license or other rolled-up identification papers inside the roller. We reject this argument. Although it might

7

be *possible* for someone to store identification inside a lint roller, that is not a location where a driver's license or identification documents reasonably would be expected to be found. (*Arturo D., supra*, 27 Cal.4th at p. 86.) Further, in their testimony at the preliminary hearing, neither Officer Aliaga nor Officer Jimenez provided any information to suggest they had a basis for concluding that the lint roller was likely to contain evidence of Primera's identification. Therefore, the limited exception for a search for identification did not permit Officer Jimenez to open the lint brush and search the contents.[3]

B. *Search of Lint Roller Pursuant to Automobile Exception*

The Attorney General also contends that the search inside the lint roller was permissible under the automobile exception to the warrant requirement, because the presence of an unknown third party's driver's license found inside the first purse provided probable cause for the search.

"Under the automobile exception, police who have probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence

---

[3] We reject the Attorney General's contention that Primera forfeited her argument that the lint roller was not a location where officers could reasonably expect to find identification, rendering the search invalid under *Arturo D.*, by failing to object to the search on those grounds below. In her motion to suppress, Primera made a satisfactory prima facie showing that the search was unreasonable because the police acted without a warrant. (*People v. Williams* (1999) 20 Cal.4th 119, 136.) At that point, the prosecution assumed the burden to prove some justification for the warrantless search or seizure, and only after the prosecution asserted such justification was Primera required to identify "any inadequacies in that justification." (*Ibid.*; see *People v. Schmitz* (2012) 55 Cal.4th 909, 915, fn. 4.) In its written opposition to the motion to suppress, however, the prosecution did not cite *Arturo D.* and did not specifically rely on the exception for a search for identification. Therefore, the burden never shifted to Primera to explain why the lint roller was *not* subject to search under *Arturo D.* As such, there was no forfeiture.

might be found.  [Citations.]  Such a search 'is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.'  [Citation.]  . . .  'If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.'  [Citations.]"  (*People v. Evans, supra,* 200 Cal.App.4th at p. 753; see *Wyoming v. Houghton* (1999) 526 U.S. 295, 300; *United States v. Ross* (1982) 456 U.S. 798, 825 (*Ross*).)

Probable cause exists when "there is a fair probability that contraband or evidence of a crime will be found in a particular place."  (*Illinois v. Gates* (1983) 462 U.S. 213, 238; see *People v. Hunter* (2005) 133 Cal.App.4th 371, 378.) Probable cause to search thus exists when the "known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found."  (*Ornelas v. United States* (1996) 517 U.S. 690, 696; see *Wimberly v. Superior Court* (1976) 16 Cal.3d 557, 564 (*Wimberly*) ["[P]robable cause for such a search exists where an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched."]; *Evans, supra*, 200 Cal.App.4th at p. 753.)  The probability that incriminating evidence will be found is of a practical and nontechnical nature, and it need not be shown that the belief is more likely to be true than false.  (*Texas v. Brown* (1983) 460 U.S. 730, 742; see *People v. Allen* (2000) 78 Cal.App.4th 445, 450.)  The probable cause standard is a """"fluid concept—turning on the assessment of probabilities in particular factual contexts,"""" and is "'incapable of precise definition.'"  (*People v. Thompson* (2006) 38 Cal.4th 811, 818.)  The possibility of an innocent explanation does not vitiate probable cause or invalidate a search or seizure.  (*Johnson v. Lewis* (2004) 120 Cal.App.4th 443, 453.)

9

However, an officer's hunch is not enough to establish probable cause. (*People v. Martin* (1973) 9 Cal.3d 687, 692.)

"If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search" (*Ross, supra*, 456 U.S. at p. 825), including any closed containers. (*California v. Acevedo* (1991) 500 U.S. 565, 580.) "Contraband goods rarely are strewn across the trunk or floor of a car; since by their very nature such goods must be withheld from public view, they rarely can be placed in an automobile unless they are enclosed within some form of container." (*Ross, supra,* 456 U.S. at p. 820.) However, "[t]he scope of a warrantless search of an automobile . . . is defined by the object of the search and the places in which there is probable cause to believe that it may be found. Just as probable cause to believe that a stolen lawnmower may be found in a garage will not support a warrant to search an upstairs bedroom, probable cause to believe that undocumented aliens are being transported in a van will not justify a warrantless search of a suitcase." (*Ross, supra,* 456 U.S. at p. 824; see *People v. Chavers* (1983) 33 Cal.3d 462, 470 (*Chavers*) ["[T]he scope and character of a vehicle search based on probable cause is limited by the reason for the search and the kind of object believed to be concealed. Probable cause to search for a stolen television set, for example, would not justify a search of the glove compartment; probable cause to search for identification would extend to the glove compartment, but would not permit cutting open the car's seat cushions."].)

In this case, the Attorney General does not contend that the officers had probable cause to believe they would find illegal drugs in Primera's car. Indeed, Delgado's admission that he had a gang affiliation, and the fact that he had $407 in cash in different denominations in his pocket, are not sufficient to establish

10

probable cause to search for drugs. Rather, the Attorney General contends that the facts and circumstances were sufficient to give the officers probable cause to believe that Primera and/or Delgado illegally were in possession of a third party's driver's license, and that a search of the car and its containers would yield further contraband.

The facts to which Officers Aliaga and Jimenez testified at the hearing on the motion to suppress, and which the Attorney General relies upon to justify the opening of the lint brush in the brown purse, consist of the following: The first purse searched in the car for purposes of finding identification contained receipts, gift cards, and department store clothing tags as well as a driver's license belonging to a woman named Michelle Julie Kegsaw. Primera initially stated that the license belonged to a friend of hers named Gabby who had left it in her car, but when told the name on the license, she said she did not know who that was, and it must be a friend of Gabby.

Based on these limited facts, there were a variety of possible explanations for the fact that Kegsaw's license was found in the car being driven by Primera. Primera could have been telling the truth when she said her friend Gabby left it there. Primera and/or Delgado could have found Kegsaw's license and kept it with the intention to use it for some fraudulent purpose. They could have manufactured a fake license using Kegsaw's name for some unlawful purpose. One or both of them could have stolen Kegsaw's purse, with her driver's license in it.

Given these and other possible explanations, Officers Aliaga and Jimenez had a reasonable suspicion that Primera and/or Delgado were engaged in some sort of criminal activity involving Kegsaw's driver's license. This suspicion would have justified extending the detention of the two individuals to permit further investigation into the facts, such as by checking to see whether Kegsaw's license

11

had been reported as stolen. (See *United States v. Arvizu* (2002) 534 U.S. 266, 273 [in determining the lawfulness of a temporary detention, courts look at the totality of the circumstances to see whether police have "'particularized and objective basis' for suspecting legal wrongdoing"]; *People v. Souza* (1994) 9 Cal.4th 224, 239.) However, a search of the car and all containers therein is not justified based on such a "reasonable suspicion" of criminal conduct; rather, the prosecution bore the burden to show that the more demanding probable cause standard was satisfied.

Here, the prosecution failed to establish probable cause existed to search Primera's car pursuant to the automobile exception. The meager facts relayed by the officers at the hearing on the motion to suppress did not provide a sufficient basis for concluding that Kegsaw's license constituted contraband, and a reasonably prudent person would not have concluded that other contraband would be found in the car. Without knowing more about what, if any, crime involving the Kegsaw license had been committed, Officer Jimenez could not have known what he was looking for when he opened the lint brush. (See *Wimberly, supra*, 16 Cal.3d at p. 564 [officer must be aware of facts that would lead reasonable person to believe that the object of the search is in the particular place to be searched]; *Chavers, supra*, 33 Cal.3d at p. 470 [scope of search limited by reason for search and the kind of object believed to be concealed].) Based on the facts presented, the officer was not justified in opening the lint brush. Therefore, the trial court should have granted the motion to suppress the narcotics and paraphernalia found inside the lint brush.

**DISPOSITION**

The judgment is reversed and the cause remanded to the trial court. That court is directed (1) to vacate its order denying Primera's suppression motion and enter a new order granting the motion as to the contents of the lint brush and (2) to permit Primera to withdraw her guilty plea.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.



We concur:




MANELLA, J.




SUZUKAWA, J.