[Crim. No. 41626. Second Dist., Div. Five. Jan. 10, 1983.]

THE PEOPLE, Plaintiff and Appellant, v.
ARTURO PLAYTEZ VASQUEZ et al., Defendants and Respondents.

COUNSEL

John K. Van De Kamp, District Attorney, Donald J. Kaplan and Maurice H. Oppenheim, Deputy District Attorneys, for Plaintiff and Appellant.

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Joy L. Wilensky, Morton P. Borenstein and John Hamilton Scott, Deputy Public Defenders, Randolph & Levanas and Donald C. Randolph for Defendants and Respondents.

OPINION

**FEINERMAN, P. J.**—The People appeal from the granting of defendants' Penal Code section 995 motion to dismiss an information charging defendants with burglary. (Pen. Code, § 459.) After reviewing the transcript of the preliminary hearing, the trial court ruled there was an illegal search of two pillowcases containing items taken in the burglary of an apartment and granted defendants' motion to suppress the evidence contained in the pillowcases. We reverse.

### *Statement of Facts*

Harry Marnell lives at 425 South Parkview Street, Los Angeles. He came home at approximately 2:15 p.m. on July 23, 1981. As he drove into his

driveway, he noticed two men whose conduct appeared suspicious. One was standing on the sidewalk next to the walkways which run between Marnell's apartment building and the building next door. The other was standing on the walkway of the building next door, inside the padlocked gate. Marnell entered his apartment and continued to observe the men. When they realized they were being watched, the man standing on the walkway climbed over the gate onto the sidewalk. The two men then left, each walking in a different direction. Neither was carrying anything at that time.

Marnell then called the police. Two officers arrived about 10 minutes later and Marnell told them what he had seen and gave them a description of the persons involved. Ten minutes after the police left, Marnell drove away from his home. He spotted the same men approximately a block away. He drove around the block, found the police officers, who by now were observing the two men, and informed the officers that they were the same men he had seen earlier.

The officers then approached the defendants. Each man was carrying an orange pillowcase which appeared to contain large, bulky, pointed items. The defendants placed the pillowcases on the ground as the officers approached. Officer Atkins testified that he did not speak Spanish, but that his partner did. His partner had told him that when they approached the defendants, Vasquez said, "Oh, shit; oh, shit," and Laguarda said, "Don't say anything." Both men stated they had found the pillowcases in the bushes.[1] Officer Atkins then looked inside the pillowcases. He found an electric fan, two cassette recorders, a clock-radio, and a pair of binoculars. The officers believed the objects found in the pillowcases were stolen. They placed the defendants in their police car and drove around the neighborhood looking for signs of a burglary. Officer Atkins testified that he deemed the defendants to be arrested when they were placed in the police car. Within 10 to 15 minutes after they started cruising in the area, the officers discovered a torn screen and hanging electrical wires covering a window at Franz Huber's apartment at 407 South Parkview Street. The police officers then took the defendants to the police station. Huber found his property missing when he returned home at 3:30 p.m. The items discovered in the pillowcases were the items taken from Huber's apartment.

### Discussion

■ We commence our analysis by noting that there clearly was sufficient cause to detain and question the defendants when they were stopped by the police officers. A citizen had identified the defendants as prowlers. They were

---

[1]The Spanish-speaking officer did not testify at the preliminary hearing and counsel for the defendants objected to the introduction of their clients' oral statements on the ground that it lacked the foundation required by *Ojeda* v. *Superior Court* (1970) 12 Cal.App.3d 909 [91 Cal.Rptr. 145].

observed carrying pillowcases containing large, bulky, pointed items. The stuffed pillowcases evidently had been acquired within the last half hour. When the defendants were last seen by the citizen informant, Harry Marnell, they were not carrying any objects. When they were approached by the police officers, both of the defendants made suspicious statements. There were specific and articulable facts causing the officers to suspect that (1) some activity relating to crime had taken place and (2) the persons they intended to stop or detain were involved in that activity. (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].)

Did the police officers have the right to inspect the pillowcases? ■ Warrantless searches are presumed to be unreasonable, therefore illegal, under the Fourth Amendment, subject only to a few carefully delineated exceptions. (*Mincey* v. *Arizona* (1978) 437 U.S. 385, 390 [57 L.Ed.2d 290, 298-299, 98 S.Ct. 2408]; *People* v. *Dalton* (1979) 24 Cal.3d 850, 855 [157 Cal.Rptr. 497, 598 P.2d 467].) A warrantless search of personal property should be the exception and not the rule. (*United States* v. *Chadwick* (1977) 433 U.S. 1, 15 [53 L.Ed.2d 538, 550-551, 97 S.Ct. 2476].) Thus, the prosecution has the burden of showing a warrantless search falls within one of those exceptions. (*McDonald* v. *United States* (1948) 335 U.S. 451, 456 [93 L.Ed. 153, 158-159, 69 S.Ct. 191]; *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269, 272 [294 P.2d 23].)

■ In the instant case the magistrate denied the defendants' suppression motion and found there was sufficient cause to bind the defendants over for trial in the superior court. In ruling on the Penal Code section 995 motion, the superior court was acting as a reviewing court. It had no power to reweigh the evidence or to make new findings of fact. We are also governed by these same standards and must make all reasonable inferences from the evidence which are supportive of the magistrate's findings of fact. (*Rideout* v. *Superior Court* (1967) 67 Cal.2d 471, 474-475 [62 Cal.Rptr. 581, 432 P.2d 197].) However, we must exercise our independent judgment in determining, on the facts found, if the search was constitutionally unreasonable. (*People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].)

Keeping the above principles in mind, we focus on the search issue. ■ Our reading of the seminal cases of *Robbins* v. *California* (1981) 453 U.S. 420 [69 L.Ed.2d 744, 101 S.Ct. 2841] and *United States* v. *Ross* (1982) 456 U.S. 798 [72 L.Ed.2d 572, 102 S.Ct. 2157] leads us to conclude that it is not the nature of a closed container that determines the degree of protection afforded by the Fourth Amendment, but rather whether there has been manifested an expectation that the contents of the closed container would remain free from public examination. As the court stated in *Ross* at page 823 [72 L.Ed.2d at page 592], ". . . the protection afforded by the Amendment varies in different settings."

The setting in the instant case encompassed the following significant facts: the defendants stated that they had found the pillowcases in the bushes before Officer Atkins inspected the items, the defendants did not indicate they had any of their personal possessions in the pillowcases, the defendants' possession of the pillowcases was brief in terms of time and transitory in nature. In *People* v. *Suennen* (1980) 114 Cal.App.3d 192 [170 Cal.Rptr. 677], the court stated at page 205: ". . . a pillowcase—save for occasional use as a laundry bag—is not commonly used as a receptacle for items in which a strong privacy interest is manifest. Moreover, the totality of the circumstances observed by the arresting officers at the arrest scene rendered unlikely the intended use of the pillowcase for any important or private or confidential purpose." Similarly, in this case there is a complete absence of any evidence manifesting any expectation of privacy on the part of the defendants in either the pillowcases or their contents. Accordingly, we conclude that there was no constitutional bar to the examination of the pillowcases by the police officers in this case.

■ Was there probable cause for arrest? When the police officers' observations of the contents of the pillowcases is added to the totality of information previously available to them, we find "such a state of facts as would lead a man of ordinary care and prudence to believe and conscientiously entertain an honest and strong suspicion that the person is guilty of *a crime.*" (*People* v. *Ingle* (1960) 53 Cal.2d 407, 412 [2 Cal.Rptr. 14, 348 P.2d 577], italics added; *People* v. *Superior Court (Price)* (1982) 137 Cal.App.3d 90, 92 [186 Cal.Rptr. 734].) The fact that the officers were unaware of the specific burglary of which the articles in the pillowcases were the loot did not vitiate the existence of probable cause when the defendants were placed in the police vehicle. This court came to such a conclusion in *In re Collins* (1969) 271 Cal.App.2d 195, 203-204 [76 Cal.Rptr. 622], and we do not believe that time has eroded the soundness of this precept. As in *Collins,* the police officers in this case had more than probable cause to believe that the defendants had not obtained possession of the contents of the pillowcases by honest means.

■ Regarding the *Ojeda* (*Ojeda* v. *Superior Court, supra,* 12 Cal.App.3d 909) objection made by the defendants, we believe the magistrate properly denied the defendants' motion to exclude from evidence, on the issue of probable cause, Officer Atkins' testimony relating his fellow officer's translation of the defendants' oral statements from Spanish to English. In the instant case we do not have the factual situations discussed in *People* v. *Madden* (1970) 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971]; *People* v. *Harvey* (1958) 156 Cal.App.2d 516 [319 P.2d 689], and *Ojeda, supra,* 12 Cal.App.3d 909, the cases cited by defendants. Those cases hold that when information relied upon to establish probable cause is communicated from an informant through a relaying officer to an arresting officer, "[t]he People must establish by sworn testimony that the officer who transmitted the information did, in fact, receive

the information from the purported source; otherwise, probable cause could be manufactured within the police department by one officer transmitting information purportedly received by him to another officer without establishing under oath how the information was obtained by the former officer." (*Sanderson* v. *Superior Court* (1980) 105 Cal.App.3d 264, 268 [164 Cal.Rptr. 290].)

Here, we are not dealing with the possibility of a phantom informer. In this case the persons who made the statements were in the courtroom when Officer Atkins testified. Officer Atkins was himself present when the defendants made their statements. Officer Atkins testified under oath how the information had been obtained by his fellow officer. This was not a situation where an arresting officer does not have any personal knowledge of facts establishing probable cause for arrest, but acts solely on the basis of information communicated to him through official channels. Obviously, it would have been better for the fact-finding process if the Spanish-speaking officer was present to testify at the preliminary hearing. Nevertheless, it is well established that hearsay is admissible for purposes of probable cause at a preliminary hearing. (*People* v. *Escollias* (1968) 264 Cal.App.2d 16, 19 [70 Cal.Rptr. 65]; *People* v. *Robarge* (1957) 151 Cal.App.2d 660, 666 [312 P.2d 70].) Moreover, in this case the hearsay evidence was just a part of the total evidence considered by the magistrate in ruling on the issue of probable cause for arrest.

The judgment is reversed.

Stephens, J., and Ashby, J., concurred.

The petition of respondent Vasquez for a hearing by the Supreme Court was denied March 24, 1983. Bird, C. J., was of the opinion that the petition should be granted.