[No. F001771. Fifth Dist. Jan. 24, 1985.]

THE PEOPLE, Plaintiff and Respondent, v.
JOSEPH GENE CARTER, Defendant and Appellant.

## COUNSEL

Frank O. Bell, Jr., State Public Defender, under appointment by the Court of Appeal, Gabriel C. Vivas and Augustus E. Noland, Deputy State Public Defenders, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Roger E. Venturi and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**FRANSON, Acting P. J.**—Appellant pleaded guilty to possession of marijuana for sale in violation of Health and Safety Code section 11359 follow-

ing denial of a motion to suppress the discovery of the marijuana. He was placed on probation for two years on the condition that he serve one hundred twenty days in local custody. As we shall explain, the motion to suppress should have been granted because of the illegal conduct of the police officer in seizing the marijuana from appellant's automobile. Accordingly, the judgment must be reversed.

On March 24, 1982, appellant was stopped by a highway patrolman because the car he was driving had an expired registration tag. The officer looked into the car and observed a beer bottle—opened and containing liquid—leaning against the transmission housing. After making a telephone call to confirm the ownership of the car, the officer went back to the car, opened the door, reached in and picked up a rolled up grocery bag from "Young's Supermarket" to look for more alcohol. Upon opening the bag, the officer found several plastic baggies containing marijuana but no bottles. The officer then noticed two handrolled cigarettes and one partially burned cigarette on the floor between the seat and the door.

Appellant made a Penal Code section 1538.5 motion to suppress the marijuana seized from the car, arguing that the traffic stop did not justify a search of the car and that even if the beer bottle and cigarettes were in plain view, a search of the grocery bag, a closed container, was unlawful. The court did not rule on the merits of the arguments but denied the section 1538.5 motion on the express "assumption" that Proposition 8 applied.

DISCUSSION

Since this is a pre-Proposition 8 case, the search involves a two-step analysis: first, whether the search of the car was authorized; second, whether the search of the rolled up grocery bag was authorized. The officer's entry into the car to seize the open beer bottle was clearly justified because the bottle was in plain view from the outside. This justification to enter the car also authorized a search within the car for more open containers of alcohol. (*People* v. *Chavers* (1983) 33 Cal.3d 462 [189 Cal.Rptr. 169, 658 P.2d 96].) The officer, however, went beyond the permissible scope of the search in finding the marijuana.

The California Supreme Court has allowed automobile searches without a specific showing of exigent circumstances in *People* v. *Chavers, supra,* 33 Cal.3d 462. But *Chavers* limits the scope of such searches to places where the contraband sought is likely to be found. (*Id.,* at p. 470.) The *Chavers* court gave separate, careful attention to the opening of a closed opaque container inside the automobile. (*Id.,* at pp. 471-473.)

Here, the officer entered the car to look for open beer bottles, not to look for marijuana. He did not see the marijuana cigarettes on the floor until after he had opened the bag. The marijuana was contained in a rolled up grocery bag. Although a grocery bag is often used to hold *unopen* beer bottles, it seldom is used for open, half-empty bottles. Further, this bag was rolled up and only contained baggies of marijuana; it did not appear to contain heavy glass bottles or beer cans. As a result, the officer's claim that he was looking for more alcoholic beverages when he opened the grocery bag is suspect. The weight and feel of the bag simply could not have justified a belief that it contained more open beer bottles.

The present case is unlike *People* v. *Chavers, supra,* 33 Cal.3d 462. There, police were legitimately searching a car for evidence of suspects' identities and a gun used in a robbery. After opening the glove compartment looking for registration papers, an officer found a zipped black plastic shaving kit. By sense of touch, the officer could immediately tell that the object inside the shaving kit was a handgun, so he opened it. The *Chavers* court also approved *Guidi* v. *Superior Court* (1973) 10 Cal.3d 1 [109 Cal.Rptr. 684, 513 P.2d 908]; *People* v. *Lilienthal* (1978) 22 Cal.3d 891 [150 Cal.Rptr. 910, 587 P.2d 706] and *People* v. *Guy* (1980) 107 Cal.App.3d 593 [165 Cal.Rptr. 463], which all involve warrantless searches of closed containers when police knew from outward appearances that the contents were contraband. (*People* v. *Chavers, supra,* 33 Cal.3d at p. 472.)

In the present case, the officer could tell from outward signs (the weight and bulk of the bag) that the bag did *not* contain the contraband he was seeking. Probable cause to look inside a car for open beer bottles is not the same as probable cause to look inside a closed container which obviously does not contain beer bottles.

 Respondent's justification for the search is that a mere paper bag does not manifest a protected interest in the privacy of its contents. Respondent argues that opening the bag was proper because it was not the kind of container entitled to protection, citing *People* v. *Fick* (1980) 107 Cal.App.3d 892 [166 Cal.Rptr. 106]; *People* v. *Diaz* (1980) 101 Cal.App.3d 440 [161 Cal.Rptr. 645]; *People* v. *Suennen* (1980) 114 Cal.App.3d 192 [170 Cal.Rptr. 677] and *People* v. *Vasquez* (1983) 138 Cal.App.3d 995 [188 Cal.Rptr. 417] (hg. den. Mar. 24, 1983).

But *People* v. *Vasquez, supra,* 138 Cal.App.3d 995 states that "it is not the nature of a closed container that determines the degree of protection afforded by the Fourth Amendment . . . ." (*Id.,* at p. 1000.) Although the *Vasquez* court held that no protected privacy interest was infringed by searching some pillow cases, it based its holding on the setting. Those de-

fendants had told officers that they just "found" the pillow cases and did not indicate that they had any of their own personal possessions inside. (*Id.,* at p. 1001.)

There are California cases suggesting that a humble paper bag is not a container entitled to constitutional protections. (See, e.g., *People* v. *Fick, supra,* 107 Cal.App.3d 892 [2d Dist. opn. by Fleming, J.] [paper bag not the sort of container "inevitably associated" with personal effects, therefore not normally subject to expectations of privacy]; *People* v. *Suennen, supra,* 114 Cal.App.3d 192 [pillow case search okay]; *People* v. *Diaz, supra,* 101 Cal.App.3d 440 [Jack-in-the-Box cup with lid could be searched].) But the reasoning of these decisions is open to question in light of *Robbins* v. *California* (1981) 453 U.S. 420, 425-427 [69 L.Ed.2d 744, 750-751, 101 S.Ct. 2841] (plur. opn. by Stewart, J.).

"The respondent, however, proposes that the *nature* of a container may diminish the constitutional protection to which it otherwise would be entitled—that the Fourth Amendment protects only containers commonly used to transport 'personal effects.' By personal effects the respondent means property worn on or carried about the person or having some intimate relation to the person. In taking this position, the respondent relies on numerous opinions that have drawn a distinction between pieces of sturdy luggage, like suitcases, and flimsier containers, like cardboard boxes. [Citations.]

"The respondent's argument cannot prevail for at least two reasons. First, it has no basis in the language or meaning of the Fourth Amendment. That Amendment protects people and their effects, and it protects those effects whether they are 'personal' or 'impersonal.' The contents of Chadwick's footlocker and Sanders' suitcase were immune from a warrantless search because they had been placed within a closed, opaque container and because Chadwick and Sanders had thereby reasonably 'manifested an expectation that the contents would remain free from public examination.' [Citation.] Once placed within such a container, a diary and a dishpan are equally protected by the Fourth Amendment.

"Second, even if one wished to import such a distinction into the Fourth Amendment, it is difficult if not impossible to perceive any objective criteria by which that task might be accomplished. What one person may put into a suitcase, another may put into a paper bag. [Citation.] And as the disparate results in the decided cases indicate, no court, no constable, no citizen, can sensibly be asked to distinguish the relative 'privacy interests' in a closed suitcase, briefcase, portfolio, duffelbag, or box." Although the plurality opinion in *Robbins* was overruled by *United States* v. *Ross* (1982) 456 U.S.

798 [72 L.Ed.2d 572, 102 S.Ct. 2157] to the extent that it barred the opening of containers during an automobile search (even when there was probable cause to look inside the container), *Robbins*' statement that the Fourth Amendment protects "the owner of every container that conceals its contents from plain view" was restated and reaffirmed by the *Ross* court. (*United States* v. *Ross, supra,* 456 U.S. at pp. 822-823 [72 L.Ed.2d at p. 592, 102 S.Ct. at p. 2171].) The exception to the warrant requirement allowing a search of the container depends on the existence of objectively ascertainable probable cause to believe that it holds contraband—not on the type of container.

"This rule applies equally to all containers, as indeed we believe it must. One point on which the Court was in virtually unanimous agreement in *Robbins* was that a constitutional distinction between 'worthy' and 'unworthy' containers would be improper. Even though such a distinction perhaps could evolve in a series of cases in which paper bags, locked trunks, lunch buckets, and orange crates were placed on one side of the line or the other, the central purpose of the Fourth Amendment forecloses such a distinction. For just as the most frail cottage in the kingdom is absolutely entitled to the same guarantees of privacy as the most majestic mansion, so also may a traveler who carries a toothbrush and a few articles of clothing in a paper bag or knotted scarf claim an equal right to conceal his possessions from official inspection as the sophisticated executive with the locked attache case." (*Id.,* at p. 822 [72 L.Ed.2d at p. 592, 102 S.Ct. at p. 2171], fns. omitted.)

The judgment is reversed.

Hanson (P. D.), J., and Martin, J., concurred.