Filed 9/24/24  P. v. Ortega CA5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>VICTOR FUENTES ORTEGA,<br><br>    Defendant and Appellant. | F086704<br><br>(Super. Ct. No. SF020708A)<br><br><br>**OPINION** |

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Kern County.  J. Eric Bradshaw, Judge.

Richard L. Fitzer, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Christopher J. Rench and R. Todd Marshall, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Hill, P. J., Meehan, J. and Snauffer, J.

## INTRODUCTION

Appellant and defendant Victor Fuentes Ortega (defendant) was charged with firearm and narcotics offenses. After his suppression motion was denied, defendant pleaded no contest to felon in possession of a firearm and was sentenced to two years in prison.

On appeal from the judgment, his appellate counsel filed a brief that summarized the facts with citations to the record, raised no issues, and asked this court to independently review the record. (*People v. Wende* (1979) 25 Cal.3d 436.) Defendant filed a letter brief raising several issues. This court requested further briefing from the parties about the trial court's denial of the suppression motion. We review the court's ruling, address the parties' contentions, and affirm.

## FACTUAL BACKGROUND[1]

Around 4:00 a.m. on February 22, 2022, Officer Kinkade was on patrol in Shafter. He was in uniform and driving a marked car by himself in the area of Parkdale Way and Spruce Park Way.

Kinkade testified that he saw a vehicle parked on Manor Grove Drive, southwest of his position. The area was dark, but Kinkade could see the front of the subject vehicle because the headlights went on, then off, and then on again. Kinkade turned onto Manor Grove Drive and drove toward the vehicle. As he drove closer, he saw a person walk away from the vehicle. The person was dressed entirely in black and was walking westbound toward an adjacent construction site. The area was "a new housing development," approximately 11 miles from the city.

---

[1] The following facts are from the evidentiary hearing on defendant's motion to suppress evidence. Shafter Police Officer Storm Kinkade, who conducted the traffic stop and search, was the only witness.

Kinkade testified there was a load of "unsecured lumber" on top of the subject vehicle, without any ropes or tie-downs to the vehicle's roof. Kinkade was concerned the lumber could have been stolen since the vehicle was parked next to the construction site.

Kinkade testified the vehicle performed a U-turn and drove away. Kinkade was driving behind it, and he saw the vehicle's rear bumper had a "blank dealership plate with a logo" without any identifying information.

**The Traffic Stop**

Kinkade testified that he decided to conduct a traffic stop based on his observations that the vehicle did not have any license plate, the person walking outside the vehicle, the unsecured lumber on top of the vehicle, and to investigate whether the lumber was stolen from the construction site. At 4:02 a.m., he activated his patrol car's signal lights, and the vehicle pulled over to the right side of the road and stopped. The traffic stop occurred on Manor Grove Drive, just south of Cotton Creek, and next to an empty field.

Kinkade approached the driver's side of the vehicle and spoke to the driver and only occupant, identified as defendant. Kinkade asked defendant for his driver's license and to step out of his vehicle. Kinkade testified he asked defendant to get out of his vehicle for safety reasons because they were in an isolated area, he had seen an individual walking by the vehicle, and he did not know if there were other patrol units in the area.

Defendant got out of the vehicle and presented his driver's license. Kinkade testified they walked to his patrol car and stood at the driver's side front bumper. Defendant was not in restraints and Kinkade did not tell him that he was under arrest.

At 4:05 a.m., Kinkade ran a warrant check on defendant's driver's license. Kincade was advised there were no warrants for defendant, and he was not on probation or parole.

**Defendant Admits the Lumber was Stolen**

Kinkade testified he did not advise defendant of the warnings pursuant to *Miranda v. Arizona* (1966) 384 U.S. 436. Kinkade asked defendant whether the wood on top of his vehicle was stolen. Defendant said he purchased the wood earlier. Kinkade asked defendant not to lie, asked if he stole the wood, and said that people had to work hard to pay for it. Defendant said he knew that because he was a gardener. Kinkade told defendant not to lie and again asked if the wood was stolen. Defendant said, " 'Yes, sir. It was a stupid idea.' "

Kinkade testified that after defendant admitted the wood was stolen, he arrested defendant, put him in handcuffs, and placed him in the back of his patrol car.

**Search of Defendant's Vehicle**

Kinkade testified that after defendant was arrested, he searched defendant's vehicle to determine if any other items were stolen from the construction site. Under a foam cushion on the driver's seat, Kinkade found a loaded Glock-style handgun in a holster. There was a plastic baggie on the rear floorboard that contained apparent methamphetamine.

After he conducted the search, Kinkade went back to his patrol car and advised defendant of the *Miranda* warnings. Kinkade advised other units to look for the second suspect who he saw by subject vehicle, but no one was located.

Kinkade testified he found the firearm about eight to 10 minutes after the beginning of the traffic stop. The police department's records showed that at 5:10 a.m., Kinkade reported to the dispatcher that he found the firearm in defendant's vehicle.

## PROCEDURAL BACKGROUND

On August 24, 2022, an information was filed in the Superior Court of Kern County charging defendant with count 1, unlawful possession of a controlled substance, methamphetamine, while armed with a loaded firearm (Health & Saf. Code, § 11370.1, subd. (a)); count 2, felon in possession of a firearm, a nine-millimeter handgun (Pen.

4.

Code,[2] § 29800, subd. (a)(1)); count 3, possession of .22-caliber ammunition (§ 30305, subd. (a)(1)); and count 4, misdemeanor possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)); with one prior strike conviction.

## MOTION TO SUPPRESS

On September 19, 2022, defendant filed a motion to suppress evidence pursuant to section 1538.5, and argued Kinkade conducted an illegal detention and search of his vehicle, illegally seized the firearm and other evidence from inside his vehicle, and moved for exclusion of the evidence and defendant's statements.

On September 30, 2022, the prosecution filed opposition and argued Kinkade's stop of defendant's vehicle was legal, the detention was reasonable, and the evidence was not subject to exclusion.

### The Trial Court's Hearing on the Motion

On October 4, 2022, the trial court conducted a hearing on defendant's suppression motion. The parties stipulated the incident involved a warrantless search and seizure. The court stated the burden shifted to the prosecution to justify the warrantless detention and search. Kinkade was the only witness and testified as set forth above.

After the testimony, defense counsel argued Kinkade illegally detained defendant without probable cause because he conducted the traffic stop to investigate the possibility the lumber was stolen, he did not stop him for a traffic violation, he ordered defendant to get out of his vehicle, and he took his driver's license. Counsel argued Kinkade should have advised defendant of the *Miranda* warnings before asking any questions, and Kinkade's search of the vehicle was the result of the illegal detention and questioning.

The prosecutor argued there was a valid traffic violation because defendant was driving a vehicle without a license plate. The prosecutor asserted that defendant's claim

---

[2]    All further statutory citations are to the Penal Code unless otherwise indicated.

of a noncoercive *Miranda* violation had to be raised at trial, and not as part of a section 1538.5 motion to exclude evidence.

Defense counsel replied there was no valid traffic violation to justify the stop, the police records showed defendant was held for an hour, and that meant he was subject to a lengthy detention.

## The Trial Court's Denial of the Suppression Motion

After hearing the parties' arguments, the trial court denied defendant's suppression motion.

> "Given that testimony by [Kinkade], I believe that does establish specific facts which the officer articulated, those being both the timing and it being four o'clock in the morning. *The timing as well as the location of where [defendant] was in the vehicle as well as that wood being unsecured on top of the vehicle, those are specific facts articulated by [Kinkade] which would give rise to a justifiable detention.* The officer stops the vehicle, detains the defendant, talks to the defendant.

> "I do believe that the evidence shows that the conversation between [defendant] and the officer was not a custodial interrogation. This Court's belief as to it not being a custodial interrogation would not be binding on the trial Court. That issue can be raised again at the trial court.

> "Based on what I've heard, the officer talked to [defendant]. [D]efendant admitted that the wood on top of the vehicle was, in fact, stolen, giving rise to probable cause to arrest [defendant], which the officer did. And then [defendant's] vehicle was *searched both incident to arrest as well as the officer having probable cause to search the vehicle.* Given the totality of the circumstances that were previously noted in the record that the officer testified to relating to wood and the location, being the construction site, for those reasons the motion is denied." (Italics added.)

## PLEA AND SENTENCE

Defendant did not file a renewed suppression motion. Instead, on February 1, 2023, defendant pleaded no contest to count 2, felon in possession of a firearm, and admitted the prior strike conviction, pursuant to a negotiated disposition for the dismissal of the prior strike conviction and an indicated midterm of two years. The trial court

6.

granted the prosecution's motion to dismiss the remaining charges and an unrelated case, subject to a waiver pursuant to *People v. Harvey* (1979) 25 Cal.3d 754.[3]

On July 20, 2023, the trial court denied defendant's motion to withdraw his plea and conducted the sentencing hearing.[4] The court granted defendant's request to dismiss the prior strike conviction and imposed the midterm of two years, consistent with the negotiated disposition.

On August 8, 2023, defendant filed a timely notice of appeal from the trial court's denial of his motions to suppress and to withdraw his plea. Counsel's request for a certificate of probable cause was denied.

## DISCUSSION

As noted above, defendant's counsel filed a *Wende* brief with this court. We requested the parties file supplemental briefs on the trial court's ruling on the suppression motion in light of the Supreme Court's recent decision about the validity of investigatory detentions in *People v. Flores* (2024) 15 Cal.5th 1032 (*Flores*).[5] Defendant also filed a letter brief challenging the denial of his suppression motion.

---

[3] "A *Harvey* waiver permits the sentencing court to consider the facts underlying dismissed counts and enhancements when determining the appropriate disposition for the offense or offenses of which the defendant stands convicted." (*People v. Munoz* (2007) 155 Cal.App.4th 160, 167.)

[4] Prior to the court's imposition of sentence, defendant moved to withdraw his plea. The trial court conducted a hearing on the motion, and defendant testified he only entered his plea because his attorney told him that the conviction would be dismissed on appeal. Defense counsel also testified at the hearing, and stated he simply explained appellate procedures to defendant and there were some issues arising from the suppression motion, but he never told defendant that he would win on appeal. The court denied defendant's motion to withdraw, and he has not raised any issues on that order in this appeal.

[5] The factual statement in the People's responsive letter brief is from both the preliminary hearing evidence and the evidentiary hearing on defendant's suppression motion. The People note that when defendant entered his plea, the parties stipulated that the preliminary hearing established the factual basis for the plea. The sole issue before this court, however, is whether the trial court should have granted defendant's suppression motion. The evidentiary hearing on that motion was held after the

7.

"In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment." (*People v. Lenart* (2004) 32 Cal.4th 1107, 1119.) "In doing so we do not consider each fact in isolation. Instead, 'we must consider "the totality of the circumstances—the whole picture." ' " (*Flores*, *supra*, 15 Cal.5th at p. 1043.)

## I. Appellant Was Not Unlawfully Detained

Defendant argues Kinkade lacked any reasonable suspicion to stop his vehicle and detain him under the Supreme Court's recent opinion in *Flores*. The People respond that Kinkade relied on specific and articulable facts to conduct the traffic stop and brief detention based on the unsecured lumber on top of defendant's vehicle, the person walking away from the vehicle, the vehicle's flashing headlights, its location next to a new construction site, and the lack of any license information on the vehicle.

## A. Traffic Stops

" 'As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred.' " (*People v. Lomax* (2010) 49 Cal.4th 530, 564.) "A lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation. The temporary seizure of driver and passengers ordinarily continues, and remains reasonable, for the duration of the stop." (*Arizona v. Johnson* (2009) 555 U.S. 323, 333 (*Arizona*).)

"Typically such inquiries involve checking the driver's license, determining whether there are outstanding warrants against the driver, and inspecting the automobile's

---

preliminary hearing, but the parties did not invite the court to rely on the preliminary hearing evidence to decide the issue.

8.

registration and proof of insurance." (*Rodriguez v. U.S.* (2015) 575 U.S. 348, 355 (*Rodriguez*); *In re H.M.* (2008) 167 Cal.App.4th 136, 142.)

" 'Once a vehicle has been detained in a valid traffic stop, police officers may order the driver and passengers out of the car pending completion of the stop without violating the Fourth Amendment.' " (*People v. Evans* (2011) 200 Cal.App.4th 735, 743 (*Evans*); *Rodriguez*, *supra*, 575 U.S. at pp. 355–356.) The driver's voluntary relinquishment of his or her identification does not constitute a seizure as long as the encounter is consensual under the totality of the circumstances. (*People v. Leath* (2013) 217 Cal.App.4th 344, 353.)

"An officer's inquiries into matters unrelated to the justification for the traffic stop … do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop." (*Arizona*, *supra*, 555 U.S. at p. 333.)

## B. Investigatory Detentions

An officer may detain someone to conduct a brief, investigatory stop when the officer " 'has a reasonable, articulable suspicion that criminal activity is afoot.' " (*People v. Huggins* (2006) 38 Cal.4th 175, 241; *Terry v. Ohio* (1968) 392 U.S. 1, 30.) The officer must have " ' "a particularized and objective basis for suspecting the particular person stopped of criminal activity." [Citations.] "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a preponderance of the evidence, and obviously less than is necessary for probable cause." [Citations.] [¶] Because it is a "less demanding" standard, "reasonable suspicion can be established with information that is different in quantity or content than that required to establish probable cause." [Citation.] The standard "depends on the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." [Citation.] Courts "cannot reasonably demand scientific certainty … where none exists." [Citation.] Rather, they

9.

must permit officers to make "commonsense judgments and inferences about human behavior." ' " (*Flores*, *supra*, 15 Cal.5th at p. 1041.)

"'[A]n investigatory detention must be temporary and last no longer than is necessary to effectuate the purpose of the stop." (*People v. Gyorgy* (2023) 93 Cal.App.5th 659, 671.) " 'The possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of [police] investigation is to resolve that very ambiguity and establish whether the activity is in fact legal or illegal .…' " (*People v. Souza* (1994) 9 Cal.4th 224, 233 (*Souza*); *People v. Letner and Tobin* (2010) 50 Cal.4th 99, 146–147.) "What is required is not the *absence* of innocent explanation, but the *existence* of 'specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion.' " (*People v. Glaser* (1995) 11 Cal.4th 354, 373.)

"There is no set time limit for a permissible investigative stop; the question is whether the police diligently pursued a means of investigation reasonably designed to confirm or dispel their suspicions quickly." (*People v. Russell* (2000) 81 Cal.App.4th 96, 101–102.) Whether an officer possessed reasonable suspicion to justify a detention is evaluated on a case-by-case basis in light of the totality of the circumstances. (*Souza*, *supra*, 9 Cal.4th at p. 231.)

## C. *Souza* and *Flores*

There are two cases relevant to the validity of the investigatory detention of defendant. In *Souza*, *supra*, 9 Cal.4th 224, the court upheld an investigative detention where an officer was on patrol at 3:00 a.m. in a residential neighborhood where burglaries and drug activity were common. The officer noticed the defendant and another person standing near a car parked at the curb, almost in complete darkness. The officer pulled behind the parked car and activated his spotlight. Immediately, two other people in the car bent down toward the floorboard area. The defendant ran away, but was apprehended and searched, and found in possession of contraband. (*Id*. at p. 228.)

10.

*Souza* held the totality of the circumstances justified the defendant's detention: "From these circumstances—the area's reputation for criminal activity, the presence of two people near a parked car very late at night and in total darkness, and evasive conduct not only by [the] defendant but by the two occupants of the parked car …—[the officer] reasonably suspected that criminal activity was afoot." (*Souza*, *supra*, 9 Cal.4th at p. 240.)

In *Flores*, the Supreme Court reached the opposite conclusion and held the defendant's suppression motion should have been granted because officers who conducted an investigatory detention lacked the articulatable and reasonable suspicion that the defendant was engaged in criminal activity. (*Flores*, *supra*, 15 Cal.5th at p. 1038.) The officers were on a nighttime patrol in an area considered to be a " 'known narcotic[s] area[]' and 'gang hangout.' " As they drove by a cul-de-sac, the officers saw the defendant standing alone by a Nissan parked at a red curb. The defendant looked at the officers, walked to the back of the Nissan, and then " 'ducked' " behind it. The officers parked behind the Nissan and stayed inside their patrol car. The defendant stood up behind the Nissan and seemed to make a stretching motion with one arm, then disappeared from sight. A few seconds later, the defendant raised his head, then again went out of sight. The officers got out of their patrol car and approached him. The defendant was bent over and facing away from the officers, and his hands were near his right shoe. After being ordered to stand up twice, the defendant finally complied and followed their directions to put his hands behind his head, and he was placed in handcuffs. (*Id*. at pp. 1038–1039.)

At the suppression hearing in *Flores*, an officer testified he detained the defendant because he believed the defendant acted suspiciously by trying to conceal himself from the police, and then bending down and pretending to tie his shoe. The officer believed the defendant was loitering for the use or sale of narcotics, based on the area and the defendant's behavior. During a patdown search, an officer hit a key fob in the

11.

defendant's pocket that activated the lights on the Nissan. The officer looked into the Nissan with a flashlight and saw a drug pipe. In response to questions, the defendant said the Nissan belonged to him and his identification was inside. The officer opened the Nissan, retrieved defendant's wallet, looked inside it, and found suspected methamphetamine. A revolver was also found in the car. (*Flores*, *supra*, 15 Cal.5th at p. 1039.)

*Flores* held defendant's behavior, along with his presence in a high crime area at night, "did not provide a particularized and objective basis for suspecting that [the defendant] was doing something illegal." (*Flores*, *supra*, 15 Cal.5th at p. 1043.)

> "[The defendant's] apparent pretext of tying his shoe, combined with his repeatedly ducking down behind the car, could reasonably be construed as 'odd' and noteworthy behavior, particularly when done in reaction to the sight of a uniformed police officer. [Citations.] Nonetheless, it bears emphasis that the standard to justify a detention is not satisfied simply because a person's behavior is 'odd.' A mere deviation from perceived social convention does not automatically signal criminal behavior. The particular conduct relied upon must, when considered in the totality of circumstances, support a reasonable suspicion that the person to be detained is, or is about to be, engaged in activity 'relating to crime.' [Citations.]

> "The fact that [the defendant] was present in a 'known narcotic[s] area[],' where the officer had arrested someone for drug-related crimes the night before, does not tip the scales in favor of detention. Notably, [the officer] did not see [the defendant] engage in any conduct suggesting he was there to buy or sell drugs or was otherwise involved in illegal conduct. He did not see [the defendant] interact with anyone, or retrieve or hide anything. [Citations.] He did not see anyone in the immediate vicinity. No one had called for help or to report a crime in progress. The hour was not particularly late. Although the officer testified that he suspected [the defendant] of 'loitering,' he did not see [the defendant] standing in that location for more than a few moments before the officers pulled up in their patrol car. When [the officer] approached on foot, he saw [the defendant] moving his hands near his feet. But the officer did not say [the defendant] appeared to hide or discard anything. Rather, he opined that [the defendant] was 'pretend[ing] to tie his shoe.' [The officer] testified that the Nissan was parked at a red curb. But he did not explain how [the defendant's] presence

next to an illegally parked car justified a detention under the totality of the circumstances." (*Flores*, *supra*, 15 Cal.5th at pp. 1045–1046.)

*Flores* contrasted the circumstances of the defendant's detention with the circumstances in *Souza*, where the court properly found articulable facts to support a reasonable suspicion of criminal activity in that case. (*Flores*, *supra*, 15 Cal.5th at p. 1048.) By comparison, *Flores* concluded the totality of the circumstances failed to support a reasonable suspicion that the defendant in this case "was loitering for the purpose of committing a narcotics offense (as the officer suspected) or was otherwise engaged in ' "criminal activity." ' " (*Id*. at p. 1045.)

In reaching this conclusion, *Flores* explained that its holding did not leave officers "without the means to follow up on behavior they view as calling for additional investigation. [The defendant] was present in a high crime area and repeatedly tried to avoid being seen by, or engaging with, the police. Those facts are certainly noteworthy. The officers would have been well within the bounds of the Fourth Amendment to continue to watch [the defendant] as he stood on the street …. They were entitled to approach [the defendant] and engage him in consensual conversation. They could have asked if he needed assistance, or had himself noted anything out of the ordinary in the vicinity. If they made additional observations while doing so, those observations may have changed the calculus. But [the defendant's] mere refusal to cooperate 'd[id] not furnish the minimal level of objective justification needed for a detention or seizure.' " (*Flores*, *supra*, 15 Cal.5th at p. 1049.)

"To be clear, officers may observe what people do in public places. They may consider what they see in plain view and determine whether what they observe merits further observation, inquiry, or intervention. They may approach people in public, engage them in consensual conversation, and take note of their appearance and behavior. Nervous behavior and attempts to conceal oneself may provide relevant context. But

13.

before officers may *detain* someone they must be able to articulate a legally cognizable reason to infringe on that person's liberty." (*Flores*, *supra*, 15 Cal.5th at p. 1051.)

## D. Analysis

Defendant argues that, as in *Flores*, the trial court herein improperly found the officer's detention of defendant was reasonable simply based on the location, time of day, and defendant's "odd behavior" of "placing unsecured wood on top of his car." Defendant argues his behavior did not create a reasonable suspicion of criminal conduct because he did not flee when the patrol car approached, he "simply went about his business," and the "odd" behavior involving the lumber was insufficient to justify a detention.

To the contrary, the undisputed record establishes Kinkade had two separate justifications to conduct the traffic stop.

### *Vehicle Code Violations*

Kinkade had reasonable suspicion to conduct the traffic stop based on his undisputed observations that defendant committed two traffic violations. Defendant's vehicle only had a blank dealership logo on the rear bumper, and it did not display license plates or other identifying information. "Absence of license plates provides reasonable suspicion that the driver is violating the law. Unless there are other circumstances that dispel that suspicion, that resolve any ambiguities in the legal status of the vehicle's conformance with applicable laws, the officer may stop the vehicle and investigate without violating the driver's Fourth Amendment rights." (*People v. Dotson* (2009) 179 Cal.App.4th 1045, 1052; Veh. Code, § 5200.)

Defendant was also operating a vehicle that was "not safely loaded, and which presents an immediate safety hazard" because of the lumber on the vehicle's roof that was not tied down or secured (Veh. Code, § 24002), and the vehicle was not "loaded as to prevent any of its contents or load … from dropping … or otherwise escaping from the vehicle" while being driven (Veh. Code, § 23114, subd. (a)).

14.

### _Reasonable Suspicion of Theft of the Lumber_

Kinkade also had a reasonable suspicion to conduct the traffic stop to investigate the possible commercial burglary of the construction site and theft of the unsecured lumber on top of the vehicle.

In contrast to _Flores_, Kinkade did not conduct the investigatory detention simply based on the vehicle's presence in a dark area in the early morning hours, unspecified furtive behavior, or the "odd" occurrence of the flashing headlights. (_Flores_, _supra_, 15 Cal.5th at pp. 1045–1046, 1049.)

Instead, Kinkade had a particularized, reasonable, and articulable suspicion to conduct an investigatory detention of defendant's vehicle based upon his observations _before_ he conducted the traffic stop—that people connected to that vehicle may have been involved in theft of lumber from the construction site. The vehicle was parked at the construction site at 4:00 a.m.; it was an isolated location; there was lumber loaded on top of the vehicle that was not secured; someone inside the vehicle flashed the headlights off and on; a person in black clothing walked from the vehicle and toward the construction site; and the fact that the lumber was on top of the vehicle and not tied down may have meant the theft was still in process. (_Souza_, _supra_, 9 Cal.4th at p. 229; _People v. Britton_ (2001) 91 Cal.App.4th 1112, 1118–1119.)

Kinkade observed more than behavior that amounted to "mere deviation[s] from perceived social convention[s]." (_Flores_, _supra_, 15 Cal.5th at p. 1045.) Neither the vehicle nor the person who walked away from it engaged in "headlong flight" (_id._ at p. 1048), but the totality of the circumstances established that Kinkade's traffic stop of the vehicle and investigatory detention of defendant were based on particularized, reasonable, and articulable suspicion of criminal activity. As required by _Flores_, Kinkade observed, in plain view, specific conduct that suggested the people connected to the vehicle were "otherwise involved in illegal conduct" at a late hour and in an isolated area,

15.

consisting of entering the construction site and stealing the lumber.  (*Id*. at pp. 1045–1047, 1049.)

## II.  Defendant Was Not Subject to an Unlawful Custodial Interrogation

We next address whether Kinkade's questions to defendant constituted an unlawful custodial interrogation in the absence of *Miranda* advisements.

## A.  Custodial Interrogation

*Miranda* advisements are required only when a person is subject to custodial interrogation.  (*People v. Mickey* (1991) 54 Cal.3d 612, 647–648.)  "Custodial" means "any situation in which 'a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' "  (*Id*. at p. 648.)

"[T]he temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop [citation] does not constitute *Miranda* custody."  (*Maryland v. Shatzer* (2010) 559 U.S. 98, 113.)

An officer's explanation to the driver as to why he was pulled over, and requesting identification and registration, qualify as the type of ordinary questions an officer is allowed to conduct during a traffic stop.  (*Rodriguez*, *supra*, 575 U.S. 348, 355; *People v. Tully* (2012) 54 Cal.4th 952, 980–981.)  "An officer's inquiries into matters unrelated to the justification for the traffic stop … do not convert the encounter into something other than a lawful seizure, so long as those inquiries do not measurably extend the duration of the stop."  (*Arizona*, *supra*, 555 U.S. at p. 333; *People v. Felix* (2024) 100 Cal.App.5th 439, 448–449.)

Similarly, a custodial interrogation does not occur where an officer detains a suspect for investigation, and the questioning is limited to the purpose of identifying a suspect or "to obtain [sufficient] information confirming or dispelling the officer's suspicions."  (*People v. Farnam* (2002) 28 Cal.4th 107, 180; *People v. Clair* (1992) 2 Cal.4th 629, 679–680.)

**B. Analysis**

Kinkade's traffic stop and investigatory detention of defendant did not become an unlawful custodial arrest, and defendant was not subject to custodial interrogation in the absence of *Miranda* advisements.

First, Kinkade validly asked defendant for his driver's license given the traffic violation of driving a vehicle without license plates. His requests for defendant to get out of his vehicle and stand next to the patrol car were also reasonable under the circumstances. Kinkade had seen the vehicle's flashing headlights, someone walk away from the vehicle, and the vehicle perform a U-turn, leading to the reasonable suspicion that defendant was the person operating the vehicle, a second person was on foot and possibly loaded the lumber onto the top of the vehicle, and that second person could still be in the area. Kinkade was alone in a dark, new construction area, and he was not sure if another patrol car was in the vicinity. Kinkade's request for defendant to get out of his own car and stand by the patrol vehicle was appropriate under these circumstances and did not amount to a custodial arrest. They were standing on the street and defendant was not restrained in any way. (*Evans*, *supra*, 200 Cal.App.4th 735, 743.)

Kinkade's initial questions to defendant did not unduly prolong either the traffic stop or the investigatory detention. Kinkade activated his patrol car's signal lights at 4:02 a.m. Kinkade ran the warrant check on defendant's license at 4:05 a.m. Kinkade's questions were aimed at dispelling the articulable and reasonable suspicions raised by his observations of the unsecured lumber on the roof of defendant's vehicle, the flashing headlights, and the person in dark clothing who walked away from the vehicle.

Kinkade's questions to defendant about whether the lumber was stolen, while defendant was standing on the street and not restrained in any way, did not unlawfully extend the duration of defendant's detention or turn the traffic stop into a custodial interrogation or result in involuntary statements. "[P]olice expressions of suspicion, with no other evidence of a restraint on the person's freedom of movement, are not necessarily

17.

sufficient to convert voluntary presence at an interview into custody." (*People v. Moore* (2011) 51 Cal.4th 386, 402 [police question to the defendant, if he "burglarize[d] the house," did not constitute custodial interrogation]; *People v. Potter* (2021) 66 Cal.App.5th 528, 541 [police did not engage in custodial interrogation when the defendant was told that he was suspected of molesting his daughter].) In addition, officers may urge a person to tell the truth and, in the absence of improper threats or promises, such a statement is not coercive. (*People v. Williams* (2010) 49 Cal.4th 405, 444.) We have said that officers may "exhort a suspect to tell the truth and repeatedly express that they believe a suspect is lying" and doing so, without more, does not amount to coercion or make any response involuntary. (*People v. Battle* (2021) 11 Cal.5th 749, 791, *People v. Wilson* (2024) 16 Cal.5th 874, 919.)

## III. Defendant's Vehicle Was Lawfully Searched

Kinkade had probable cause to arrest defendant when he admitted the lumber on top of his vehicle was stolen. At the suppression hearing, the parties stipulated that there was no warrant for the search of defendant's vehicle, but disagreed as to whether Kinkade lawfully conducted the search and found the weapon and the narcotics.

"Warrantless searches are presumed to be unreasonable, therefore illegal, under the Fourth Amendment, subject only to a few carefully delineated exceptions." (*People v. Vasquez* (1983) 138 Cal.App.3d 995, 1000; *People v. Sims* (2021) 59 Cal.App.5th 943, 950.) The trial court found two relevant exceptions applicable in this case: a search incident to arrest and the automobile exception to the warrant requirement.

## A. Search Incident to Arrest

A search incident to a lawful arrest exception "derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." (*Arizona v. Gant* (2009) 556 U.S. 332, 338 (*Gant*).)

There is a "two-part rule under which an automobile search incident to a recent occupant's arrest is constitutional (1) if the arrestee is within reaching distance of the

vehicle during the search, *or* (2) *if the police have reason to believe that the vehicle contains 'evidence relevant to the crime of arrest.'* " (*Davis v. U.S.* (2011) 564 U.S. 229, 234–235, italics added; *Gant*, *supra*, 556 U.S. at p. 351.) The warrantless search will be upheld if either prong is satisfied. (*People v. Johnson* (2018) 21 Cal.App.5th 1026, 1035 (*Johnson*).)

The first prong of this test cannot be satisfied if the defendant has already been handcuffed and taken into custody, or is otherwise restrained by the police and unable to access the car, at the time of the search. (*Evans*, *supra*, 200 Cal.App.4th at pp. 745–746.) To justify the search under the second prong, the officers must have a reasonable belief that evidence of the offense of arrest is located within the car. (*Id.* at pp. 750–751.) "[A] reasonable belief to search for evidence of the offense of arrest exists when the nature of the offense, considered in conjunction with the particular facts of the case, gives rise to a degree of suspicion commensurate with that sufficient for limited intrusions such as investigatory stops." (*Id.* at p. 751.)

"In either of these situations, *Gant* provides the generalized authority to search the entire passenger compartment of a vehicle and any containers therein incident to arrest." (*People v. Nottoli* (2011) 199 Cal.App.4th 531, 555.) When neither justification is present, "a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." (*Gant*, *supra*, 556 U.S. at p. 351.)

## B. The Automobile Exception

The trial court also found the automobile exception to the warrant requirement was applicable to Kinkade's search. "Under the automobile exception, police who have probable cause to believe a lawfully stopped vehicle contains evidence of criminal activity or contraband may conduct a warrantless search of any area of the vehicle in which the evidence might be found. [Citations.] Such a search 'is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not

actually been obtained.' " (*Evans*, *supra*, 200 Cal.App.4th at p. 753; *Johnson*, *supra*, 21 Cal.App.5th at pp. 1034–1035.)

"Probable cause exists when, considering the totality of the circumstances, the 'known facts and circumstances are sufficient to warrant a [person] of reasonable prudence in the belief that contraband or evidence of a crime will be found.…' " (*Johnson*, *supra*, 21 Cal.App.5th at pp. 1034–1035.) " 'If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search.' " (*Evans*, *supra*, 200 Cal.App.4th at p. 753; *People v. Sims*, *supra*, 59 Cal.App.5th at pp. 950–951.)

## C. Analysis

The trial court correctly found Kinkade's search of the vehicle was valid because it was incident to defendant's arrest. The search did not qualify under *Gant*'s first test because defendant had been handcuffed, taken into custody, and placed in the backseat of Kinkade's patrol car. Under *Gant*'s second test, however, Kinkade's search was valid incident to defendant's arrest for his admitted theft of the lumber from the adjacent construction site, because Kinkade had a reasonable belief there was additional evidence in the vehicle consisting of construction materials that were smaller than the stack of lumber and thus capable of being placed inside the vehicle. (*Evans*, *supra*, 200 Cal.App.4th at p. 751.)

For the same reasons, the trial court also correctly found that Kinkade's search of defendant's vehicle was lawful under the automobile exception. Defendant admitted the lumber on top of his vehicle was stolen, thus establishing probable cause that his vehicle could contain other items stolen from the construction site. In addition, Kinkade had seen a second person walking from defendant's vehicle to the construction site shortly before defendant conducted the U-turn. Such undisputed facts established probable cause to believe defendant had an accomplice who assisted in taking the lumber and placing it on the roof of his vehicle, and other stolen items also could be in the vehicle.

20.

## IV.  Defendant's Letter Brief

We now address the issues that defendant raised in his letter brief.  Defendant did not testify at the suppression hearing, but argues his suppression motion should have been granted based on his unsworn narrative account of the incident that he stated in his letter brief, as follows:  defendant was a gardener, he was out early to get ready for his first job, his dog was with him, he stopped at the construction site because he had to use the portable toilet, he spoke to the construction site's security guard and asked for permission to use it, the guard said it was okay, defendant used the portable toilet, and he returned to his vehicle and drove away.  Defendant states he never took anything from the construction site, and he did not have a gun in his vehicle.  Defendant believes the person who Kinkade saw by his vehicle was actually the security guard from the construction site.

Defendant further asserts he was "yanked out" of his vehicle and never asked to get out.  After he was questioned, he was placed in the officer's patrol car "along with my dog."  Defendant states he never gave permission for anyone to search his vehicle, and he never had a gun.  Defendant complains that he asked for fingerprints to be taken from the gun because there was no proof he touched it.  He asked for the officer's vest and dash cameras, but found out the officer did not have any from the traffic stop.  He also asked to locate the security guard from the construction site, but the person was never found. Defendant claims he was never asked to explain what happened that day.

Defendant did not testify at the suppression hearing, this version of the incident was not introduced into evidence at the suppression hearing, and Kinkade's testimony was admitted without dispute.  Moreover, defendant's account does not undermine Kinkade's reasonable suspicion of criminal activity and decision to conduct an investigatory detention because " '[t]he possibility of an innocent explanation does not deprive the officer of the capacity to entertain a reasonable suspicion of criminal conduct. Indeed, the principal function of [police] investigation is to resolve that very ambiguity

21.

and establish whether the activity is in fact legal or illegal ….' " (*Souza*, *supra*, 9 Cal.4th at p. 233.)

After independent review of the record, we find that no reasonably arguable factual or legal issues exist.

## **DISPOSITION**

The judgment is affirmed.